Jason Edward Ochs, WY Bar #7-4965
OCHS LAW FIRM, P.C.
323 S. David Street
Casper, WY 82601
307-234-3239
Facsimile: 307-235-6910
jason@ochslawfirm.com

William D. Marler, Esq.
Marler Clark
The Food Safety Law Firm
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
206-346-1890
bmarler@marlerclark.com
*pro hac vice pending*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 FEB 8  PM 3 05

STEPHAN HARRIS, CLERK
CASPER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| PAUL FEYHL, and others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action NO.   13CV 024 J |
| GOLDEN CORRAL, CORPORATION., a North Carolina Corporation | ) ) ) |
| Defendant. | ) ) |

---

### CLASS ACTION COMPLAINT FOR DAMAGES
### AND DEMAND FOR JURY TRIAL

---

The plaintiff PAUL FEYHL, on behalf of himself and all those similarly situated, by and

through his counsel of record, JASON EDWARD OCHS of Ochs Law Firm, PC, and WILLIAM

D. MARLER of Marler Clark, LLP., P.S, (pending admission *pro hac vice*) states, alleges and complains as follows:

## PARTIES

1.  The plaintiff, Mr. Paul Feyhl, is a resident of Casper, Natrona County, Wyoming. Mr. Feyhl purchased and consumed food and drink at the defendant's restaurant located at 5091 E. 2nd Street, Casper, Natrona County, Wyoming, on December 8, 2012. The Wyoming Department of Public Health announced on or about December 12, 2012, that customers who had visited the defendant's Casper restaurant at any time from November 19, 2012 through December 12, 2012, may have been exposed to a gastrointestinal virus, knkown as the norovirus, through an infected employee(s). The Wyoming Department of Public Health announced that persons who had consumed food or drink at the defendant's Casper restaurant were accordingly at risk for development of gastrointestinal infections. Thereafter, it was reported by the Wyoming Department of Health on or about February 7, 2013 that they had identified no less than twenty one (21) employee cases (67.7%) who reported working while symptomatic with diarrhea or vomiting. It was further reported that employee illnesses started as early as November 19, 2012 and as late as December 13, 2012. The proposed class consists of all those persons who purchased and/or paid to eat at the Golden Corral Casper restaurant from November 20, 2012 through December 13, 2012.

2.  The defendant Golden Corral, Corporation is a properly licensed Raleigh, North Carolina corporation, doing business as a restaurant located at 5091 E. 2nd Street, Casper, Natrona County, Wyoming. This defendant at all times material hereto was carrying on in its ordinary course of business of the corporation, was in the business of the manufacture, preparation, service and sale of food to its store customers at that location, and as such was doing

business in Natrona County, Wyoming.

## II.

## JURISDICTION AND VENUE

3. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

4. Venue in this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a), as this is the judicial district where a substantial number of the events, actions or omissions giving rise to Plaintiff's claims occurred. At all times material hereto, Defendants were for profit corporations conducting substantial business in this district.

## III.

## THE NATURE OF THE ACTION

5. This is a class action lawsuit brought on behalf of persons injured as a result of their potential exposure to Norovirus (NV) in November and December 2012 at defendant's restaurant located at 5091 E. 2nd Street, Casper, Natrona County, Wyoming. The exposure was caused by 1) exposure from diarrhea and vomiting from multiple employees of the defendant; 2) consumption of contaminated food and drink prepared by the defendant; or, 3) exposure to, or close proximity with, persons who ate food or drink at the defendant's restaurant or were exposed to the defendant's NV infected employees.

6. The plaintiffs in this lawsuit are those persons who purchased and/or paid monies to consume food or drink at the Golden Corral Casper restaurant at anytime between November 20, 2012 through December 11, 2012.

## IV.

## CLASS ACTION ALLEGATIONS

7. This action is brought as a class action, pursuant to the Federal Rules of Civil Procedure 23, on behalf of all persons who were potentially exposed to NV and purchased and/or paid for food or drink from November 20, 2012 through December 13, 2012 at defendant's restaurant located at 5091 E. 2nd Street, Casper, Natrona County, Wyoming.

8. The plaintiff does not yet know the precise size of the class, but according to the Wyoming Depart of Health, approximately 7,000 individuals ate at the Golden Corral Casper restaurant from approximately November 20, 2012 through December 13, 2012. However, the plaintiff understands and believes that multiple employees of the defendant were ill with NV, and prepared or served food to customers on multiple days.

9. Because the defendant's potentially contaminated food was distributed and sold in high volume, and over a number of days, joinder is impracticable. In addition, joinder is impracticable because of the confidential nature of the State's epidemiological investigation, which does not allow the Wyoming Department of Public Health or State Epidemiologist to disclose the identity of any persons injured in the outbreak.

10. There are numerous questions of law and fact that are common to the respective class members, including but not limited to:

    (a) Whether the defendant breached express and implied warranties by its sale of food that was potentially contaminated with NV;

    (b) Whether defendant was negligent in its manufacture and sale of food that was potentially contaminated with NV;

(c) Whether the defendant was negligent in allowing one or more of its employees to work while infected with NV;

(d) Whether the defendant is liable to all potentially exposed persons who at at their restaurant from November 20, 2012 through December 13, 2012.

(e) Whether the defendant had a duty to ensure ill employees were not working and/or handling food in any manner.

(f) Whether the defendant had a duty to warn patrons that ill employees were working and handling food.

11. Common questions of law and fact predominate over any questions affecting only individual class members.

12. The plaintiff Paul Feyhl's claims are typical of the claims available to all potentially exposed class members, each of whom was potentially exposed to either potentially contaminated foods or potentially infected persons. The damages and relief sought by this plaintiff are also common to the exposed class and its members, because the price for food and drink at the Golden Corral Casper restaurant is applicable to all class members and therefore are similar throughout the exposed class.

13. The plaintiff will fairly and adequately represent and protect the interests of the class. The plaintiff has no identifiable conflicts with any other potential class member.

14. The plaintiff has retained competent counsel, who are experienced in food-borne illness litigation, and who have extensive experience with class action litigation. The plaintiff's co-counsel – William D. Marler and the Seattle, Washington law firm of Marler Clark – was lead counsel in the Jack-in-the-Box *E. coli* O157:H7 litigation during its entire five years duration. That litigation included the Jack-in-the-Box class action lawsuit that was filed in Washington

CLASS ACTION COMPLAINT

State Superior Court, and the consolidated federal court action (*In re Jack in the Box/Foodmaker Litigation*) that proceeded in United States District Court and involved over twenty (20) families with injured children. Marler Clark has represented approximately 1,300 persons as part of a class action on behalf of persons who received IG shots due to an HAV outbreak in June and July, 2000, in Spokane Washington, which was associated with food served at a Carl's Jr. fast food restaurant there. Marler Clark represented more than 1,500 individuals in a class action related to an HAV outbreak at the D'Angelo's store in Swansea, Massachusetts in 2001. In 2003, Marler Clark represented approximately 9,000 persons who received IG shots due to an outbreak of HAV at a Chi-Chi's restaurant near Pittsburgh, Pennsylvania. Marler Clark also represented approximately 3,800 persons as part of a class action on behalf of persons who received IG shots due to an HAV exposure in June, 2004, at a Friendly's restaurant in Arlington, Massachusetts. Marler Clark also represented approximately 850 persons as part of a class action on behalf of persons who received IG shots due to an HAV exposure at a Quizno's restaurant in Boston, Massachusetts in 2004. Marler Clark also represented over 3,000 persons who received IG shots due to potential HAV exposure in January 2007, at a Houlihan's restaurant in Geneva, Illinois.

15. The plaintiff is unaware of any possible difficulty in the management of this litigation that would prevent it from being maintained as a class action. The class action mechanism is superior to other alternatives, if any exist, for the fair and efficient adjudication of the controversy.

16. The identity of potential class members can be ascertained by providing reasonable notice to the potential class members, by publication in local newspapers and other similar media.

17. In the absence of a class action, individual litigation of these claims will be unreasonably expensive, in light of the probable damages that might be recovered, and will unreasonably burden the courts of this state, wasting important judicial resources.

18. In the absence of a class action, individual litigation will also waste money that would otherwise be available to compensate these persons who were potentially exposed to infected persons or food, and who accordingly needed vaccination.

19. In the absence of a class action, persons who might otherwise possess a remedy, and might otherwise be able to seek judicial relief, may be left without a reasonable means to obtain justice and full compensation for the injuries they sustained.

20. In the absence of a class action, and in the absence of prompt notification of all potential class members, any minor claims arising from this potential NV outbreak may languish, and may do so without the statute of limitation beginning to run until each minor turns 18. As a result, litigation related to this potential outbreak could be in the courts, intermittently, and without coordination, for the next 20 years. In contrast, a class action lawsuit will allow for the efficient and expeditious adjudication of all such claims.

V.

**BREACH OF WARRANTIES**

21. The defendant is the owner and operator of the retail food establishment that manufactured and sold the potentially adulterated food that created the risk and injured the plaintiffs. The defendant is the manufacturer, distributor or seller of the potentially adulterated food product, which reached its intended consumers without substantial change from the condition in which it was sold by defendant.

22. The defendant is subject to liability to plaintiffs for its breach of express and implied warranties made to its patrons with respect to the food product sold to those patrons, including the implied warranties of merchantability and of fitness for a particular use. Specifically, defendant expressly warranted, through its sale of food to the public, and by the statements and conduct of its employees and agents, that the food it prepared and sold to its patrons was fit for human consumption, and not otherwise potentially adulterated or injurious to health.

23. The plaintiffs allege that the food sold by the defendant and consumed by its patrons, which was potentially contaminated with NV and related filth and adulteration, would not pass without exception in the trade, and was thus in breach of the implied warranty of merchantability.

24. The plaintiffs further allege that the potentially contaminated food sold by defendant and consumed by its patrons was not fit for the uses and purposes intended by either the patrons or the defendant, *i.e.*, human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

25. The defendant owed a duty to its patrons and to the plaintiffs to manufacture and sell only food that was not potentially adulterated, was fit for human consumption, was reasonably safe in construction, and was free of potential pathogenic viruses or other substances injurious to human health. The defendant breached this duty.

26. The defendant owed a duty to its patrons and to the plaintiffs to prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable and ordinary consumer. The defendant breached this duty.

27.    The plaintiffs are all persons who paid monies to eat at Defendants' food establishment and were exposed to food or persons potentially contaminated with NV served by the defendant and its employees, and are thus all persons who the defendant might reasonably have expected to use, consume or be affected by its potentially contaminated food products.

28.    Because the food that its patrons purchased and consumed was potentially adulterated, not fit for human consumption, not reasonably safe in design and construction, lacked adequate warnings and instructions, and was unsafe to an extent beyond that contemplated by the ordinary consumer, the defendant breached both express and implied warranties, and is liable to the plaintiffs affected thereby for the harm proximately caused to the plaintiffs by its manufacture and sale of potentially contaminated and adulterated food products.

## VI.

## NEGLIGENCE

29.    The defendant manufactured, distributed and sold a food product that was potentially adulterated, not fit for human consumption, and that was not reasonably safe as designed, manufactured, or sold.

30.    The defendant was negligent in the manufacture, distribution, and sale of a food product that was potentially adulterated with NV, not fit for human consumption, and not reasonably safe because adequate warnings or instructions were not provided.

31.    The defendant had a duty to properly supervise, train, and monitor its employees, or the employees of its agents or subcontractors, engaged in the preparation of its food products, to ensure compliance with the defendant's operating standards and to ensure compliance with all applicable health regulations. The defendant failed to properly supervise, train, and monitor its

employees engaged in the manufacture, preparation and delivery of the food product defendant sold to its patrons, and thus breached that duty.

32. The defendant owed the plaintiffs the duty to exercise reasonable care in preparation, handling and sale of its food products, as it was reasonably foreseeable that the defendant's manufacture and sale of food products potentially contaminated with NV would cause injury and harm to all persons potentially exposed to NV. The defendant has breached that duty, and thereby caused injury to these plaintiffs.

33. The defendant was negligent in failing to require its employees to obtain immunizations, and in allowing one or more employees to work while infected with NV or while having simultaneous diarrhea or vomiting while on the job.

34. The defendant's negligent acts and omissions have caused plaintiffs economic harm, and related general and special damages.

## VII.

## DAMAGES

35. The plaintiff, and all those similarly situated, *i.e.* the class of persons exposed either to potentially contaminated food or to potentially infected persons, have suffered general and special, incidental and consequential damages as the direct and proximate result of the acts and omissions of the defendant, which damages shall be fully proven at the time of trial. These damages include the cost of their meal; and all other ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray for the following relief:

(1)     That the court award the plaintiff, on behalf of himself and all those similarly situated, judgment against defendant for such sums as shall be determined to fully and fairly compensate them for all special, incidental and consequential damages respectively incurred by them as the direct and proximate result of the acts and omissions of the defendant;

(2)     That the court award the plaintiff, and all those similarly situated, their respective costs, disbursements and reasonable attorneys' fees incurred;

(3)     That the court award the plaintiff, and all those similarly situated, the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(4)     That the court award such other and further relief as it deems necessary and equitable in the circumstances.

Dated February 8th, 2013

Respectfully submitted,<br>
The Plaintiffs,<br>
By Their Attorneys,<br><br>
_____<br>
Jason Edward Ochs, WY Bar #7-4965<br>
OCHS LAW FIRM, P.C.<br>
323 S. David Street<br>
Casper, WY 82601<br>
307-234-3239<br>
Facsimile: 307-235-6910

<u>Of Counsel: (pending admission pro hac vice)</u>
William D. Marler, Esquire
MARLER CLARK. L.L.P., P.S.
2800 Russell Investment Center
1301 Second Ave.
Seattle, WA 98101
Tel. (206) 346-1888